**Ada P.C. JACOBSEN, Appellant,**

v.

**Jacob H. JACOBSEN, Appellee.**

**No. 13–85–107–CV.**

Court of Appeals of Texas,
Corpus Christi.

May 2, 1985.

Pamela E. George, Houston, for appellant.

Scott T. Cook, William A. Dudley, Corpus Christi, for appellee.

Before NYE, C.J., and SEERDEN, and BENAVIDES, JJ.

## OPINION

SEERDEN, Justice.

This is an appeal from an interlocutory order granting a temporary injunction entered in a suit to modify a divorce decree. The decree sought to be modified is dated April 4, 1983. Such decree named Ada P.C. Jacobsen, appellant (former wife and mother), managing conservator of the two children of the parties and named Jacob H. Jacobsen, the movant in the trial court and appellee in this appeal, as possessory conservator.

A recitation of the facts leading to the granting of the order appealed from is necessary for a proper disposition of this case.

The parties are Canadian citizens who were married in July, 1972. Both children of the marriage were born in Canada, one on February 13, 1974, and the other on April 8, 1975. In 1981, appellee (father and ex-husband) moved to Corpus Christi, Nueces County, Texas. He has lived in Corpus Christi continually since that time. On January 3, 1983, he filed an action for divorce. His wife made a general appearance. No one has questioned the jurisdiction of the 94th District Court of Nueces County over either the subject matter or the parties in this matter. At the time of the divorce, appellant was still living in Canada and, in fact, has resided in Canada at all times material to this case. The children had been living with their father, appellee, since July, 1982. At the time the divorce decree was entered, April 4, 1983, appellant was named managing conservator and appellee was named possessory conservator of the children. Not withstanding, the two girls continued to live with their father, who ultimately remarried. They entered school and completed the 82–83 school years in Corpus Christi. During the time the children began living with their father until July, 1984, (when the present controversy began) appellant came to Corpus Christi to see the children on three occasions. Each of these visits lasted from five to seven days. The mother (appellant) did not have the physical possession of her children during these years, except during her visits to Corpus Christi. The father (appellee) fully supported the children; appellant made no financial contribution to their support, education or welfare.

In July, 1984, at appellant's request, the children were sent for a visit with appel-

lant's relatives in New Jersey. While the nature and purpose of the visit is disputed, the facts show that appellee purchased round-trip tickets for the children to return to Corpus Christi; however, appellant cancelled the return flight to Corpus and used the money to fly the children to her home in Canada. The children remained with appellant until late October, 1984, approximately three months, when appellee went to Canada, obtained their possession under the pretense of a weekend visit and brought them back to Corpus Christi. The present motion to modify was filed by appellee prior to his going to Canada and getting the children, but was not served on appellant until the children were moved to the United States.

Other proceedings involving this matter were a hearing on temporary orders and habeas corpus proceeding in the trial court and a mandamus action in this Court. *See Jacobsen v. Haas*, 688 S.W.2d 634 (Tex. App.—Corpus Christi, 1985, no writ), for details of these proceedings. On January 30, 1985, the trial court granted appellant's application for writ of habeas corpus and immediately began a hearing on appellee's motion for additional temporary orders which he had filed on January 25, 1985. On February 1, 1985, the trial court granted the request for additional temporary orders. These orders form the basis of this appeal.

In her first three points of error, appellant contends it was error and a clear abuse of discretion for the trial court to temporarily enjoin her from removing the children from Nueces County or from the London Elementary School, in which they are enrolled, or in acting in concert with others to remove the children from Nueces County, until the end of the 1985 school year.

█ At the outset, we note a trial court has broad discretion in determining whether or not to grant a temporary injunction. *Transport Company of Texas v. Robertson Transports, Inc.*, 261 S.W.2d 549, 552 (Tex.1953); *Ogden v. Coleman*, 660 S.W.2d 578, 582 (Tex.App.—Corpus

Christi 1983, no writ). In addition, trial courts are vested with wide discretion in proceedings involving custody and control of children. *Dunker v. Dunker*, 659 S.W.2d 106, 108 (Tex.App.—Houston [14th Dist.] 1983, no writ); *Hamann v. Morentin*, 660 S.W.2d 645, 646 (Tex.App.—Fort Worth 1983, no writ). We must also always keep in mind the age old admonition presently embodied in TEX.FAM.CODE ANN., Section 14.07(a) (Vernon 1975): "[t]he best interest of the child shall always be the primary consideration of the court in determining questions of managing conservatorship, possession, and support of and access to the child."

A review of the transcript and statement of facts in this case causes us to conclude that the trial judge would have been justified in believing that, at least since July, 1984, both appellant and appellee, who appear in other respects to be loving and dedicated parents, have been engaging in the type of "gamemanship" in which separated or divorced parents often become embroiled to satisfy their own selfish or egotistic purpose at the expense of innocent children who become pawns in a legalistic battle for control of their lives. This is poignantly pointed out in the heartrending letter from one of the little girls in this case. In part, she writes:

> [n]ever forget whoever I live with I'll love you guys (the parents) equally and I'll miss whoever I don't get to live with and I'll never forget my Mom and Dad. You guys are important to me. Nothing else makes me happier to see you guys. Nothing else is more important to me than you guys. Nothing else would make me happier to see you guys get together and work things so its fair....

█ We have no hesitancy to hold that the trial court had the discretion in this case to order these children to remain in the environment in which the mother (appellant), the managing conservator, had seen fit to place them for the major part of the time since the divorce; to keep them in the place and school they were attending at the time of these proceedings, and to main-

tain the status quo until the end of the school year.

TEX.FAM.CODE ANN., Section 11.11 (Vernon Supp.1985) specifically authorizes the granting of temporary orders for the safety and welfare of the children. The trial court's orders in this instance affirmatively state that the orders are for the safety and welfare of the children and are in their best interest.

The only statutory limitation on the trial court's discretion in issuing temporary orders for the safety and welfare of the children is contained in TEX.FAM.CODE Sec. 14.08(g) which provides that while a motion to modify or for further action is pending the court may not issue temporary orders that have the effect of changing the designation of managing conservator unless there is a serious immediate question concerning the welfare of the child.

Appellant's contention that the orders in this case "effectively change the managing conservator" is without merit. She was managing conservator from the date of the divorce until July, 1984. She makes no contention that the children being in school in Corpus Christi, Nueces County, Texas during that time had the effect of changing the managing conservator. She allowed the children to remain in Nueces County with their father and attend school in Nueces County. The managing conservator has the right to establish the residence of the children. Appellant established that residence in Nueces County and the trial court had the authority to temporarily maintain it for the safety and welfare of the children.

The case of *Werlein v. Werlein*, 652 S.W.2d 538 (Tex.App.—Houston [1st Dist.] 1983, no writ), is not in point. In the first place, the trial court's order in *Werlein* was a permanent modification. Secondly, while such order permitted the father to retain the designation of managing conservator, the other provisions in such order clearly emasculated all powers, duties, privileges, and responsibilities from such title.

Appellant's first three points of error are overruled.

■ In her fourth and fifth points of error, appellant complains of the portions of the trial court's temporary injunction prohibiting her from proceeding further with a Canadian case filed by her relating to the same subject matter as is before our Court as well as proceeding in any other case in Canada, or in any other country or state, to obtain any type of orders relating to the parties or subject matter of this litigation. She contends that the trial court's injunction is overly broad and restrictive. While there is authority in Texas cases permitting Texas courts to enjoin parties from proceeding with litigation in other states, *P.P.G. Industries, Inc. v. Continental Oil Co.*, 492 S.W.2d 297 (Tex. Civ.App.—Houston [1st Dist.] 1973, writ ref'd n.r.e.); *Chapman v. Marathon Manufacturing Co.*, 590 S.W.2d 549 (Tex.Civ. App.—Houston [1st Dist.] 1979, no writ), we have not found, nor have we been referred to any Texas case where a trial court enjoined a citizen of a foreign country from seeking relief in their own country. After due consideration, we hold that the trial court has the inherent power, under proper circumstances, to enjoin a citizen from another country from proceeding with litigation, even in their native land. The language in *Garpeg, Ltd. v. United States*, 583 F.Supp. 789 (S.D. New York 1984) is well reasoned and sound. There, Chase Manhattan Bank, as intervenor, sought to enjoin Garpeg, a Hong Kong corporation, from legal proceedings in the courts of Hong Kong. The trial court wrote that a court has power to enjoin a party before it from pursuing similar litigation in a foreign tribunal and stated the issue is not one of jurisdiction but rather of comity. *Id.* at 798. The Court then set out a two-part test:

"The threshold question is whether the parties are the same and resolution of the first action will be dispositive of the action to be enjoined."

If the threshold requirements are met, a foreign action should be enjoined "when

**48**

it would (1) frustrate a policy in the forum issuing the injunction, (2) be vexatious, (3) threaten the issuing court's in rem or quasi in rem jurisdiction or (4) where the proceedings prejudice other equitable considerations." Similarly, an injunction is appropriate if adjudication of the same issue in separate actions would result in "unnecessary delay, substantial inconvenience and expense to the parties and witnesses, and where separate adjudications could result in inconsistent rulings or a race to judgment." *Id.* (quoting *Cargill, Inc. v. Hartford Accident & Indemnity Co.,* 531 F.Supp. 710, 715 (D.Minn.1982)).

We cannot imagine any useful purpose to be gained by an attempt to interfere with the trial court's jurisdiction until the injunctive issues are decided. No contest has been asserted by the parties that could be construed as being inconsistent with this jurisdiction. We hold that the trial court did not abuse its discretion in granting the temporary injunction. In both the Texas and Canadian suits the parties are identical and the issues are essentially the same; thus, the threshold question is answered in favor of the court's order.

In addition, sustaining the temporary injunction promotes the important state policy of reserving custody matters to the court of continuing jurisdiction, and will avoid an unseemly conflict should proceedings in different forums result in inconsistent judgments. Such potential for conflict should especially be avoided when the primary consideration in a suit (such as this one) revolves around the best interests of the children, and not solely the competing pecuniary claims of individual litigants. Furthermore, the Texas case has been set for speedy disposition and much of the testimony concerning the best interests of the children must necessarily come from witnesses who reside in Texas in that the children have been here for the last two years. We therefore overrule appellant's fourth and fifth points of error.[1]

Finding no error, the order of the trial court is affirmed.

---

1. For a thorough discussion of international comity and the propriety of an antisuit injunc-

tion see *Laker Airways v. Sabena, Belgian World Airlines,* 731 F.2d 909 (D.C.Cir.1984).